UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-22791-BLOOM/Louis

VILMA MARQUEZ,

      Plaintiff,

v.

NATIONAL FIRE AND MARINE
INSURANCE COMPANY,

      Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant National Fire and Marine Insurance Company's ("Defendant") Motion for Final Summary Judgment or, in the Alternative, for Partial Summary Judgment, ECF No. [32] ("Motion"). The Court has reviewed the Motion, the supporting and opposing submissions, all relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons explained below, Defendant's Motion is granted in part and denied in part consistent with this Order.

## I. BACKGROUND

On November 13, 2019, Plaintiff initiated this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Defendant for breach of an insurance contract and declaratory relief. *See* ECF No. [1-1] at 1-8 ("Complaint"). On January 16, 2020, Plaintiff amended her Complaint, *see id.* at 131-38 ("Amended Complaint"), asserting two counts: Count I – Declaratory Judgment and Count II – Breach of Contract. *See generally id.* On July 7, 2020, Defendant removed the case to federal court based upon diversity jurisdiction. *See* ECF No. [1] ("Notice").

Defendant now files the instant Motion, ECF No. [32], along with its corresponding Statement of Material Facts, ECF No. [31] ("SMF"). Plaintiff has filed a response in opposition to Defendant's Motion, ECF No. [47] ("Response"), with an accompanying Response to Defendant's Statement of Material Facts, ECF No. [48] ("CSMF"). Defendant filed a Reply, ECF No. [50] ("Reply"). In addition, on July 7, 2021, the Court held a hearing on the Motion, among others, and considered further argument. *See* ECF No. [57].

## II.  MATERIAL FACTS[1]

### A.  The Underlying Facts

This case involves a claim for insurance benefits allegedly owed to Plaintiff pursuant to her homeowner's insurance policy. *See* ECF No. [1-1] at 132-33, ¶¶ 7-16.[2] Defendant issued the insurance policy to Plaintiff and her husband for property located at 11222 SW 95 Court, Miami, Florida 33176 ("Property"). *See generally* ECF No. [23-2] ("Policy"). During the policy period, the Property sustained a covered loss. *See* ECF No. [26-1] at 229 (property loss notice); *see also* ECF No. [26-1] at 36:14-37:7. Plaintiff first noticed water leaking from an interior wall of the Property on June 5, 2019, and she reported the loss on June 12, 2019. *See* ECF No. [26-1] at 229; *see also* ECF No. [26-1] at 36:14-37:7. Plaintiff's cause, origin, and damage expert, Alfredo Brizuela, has since determined that the loss resulted from strong wind forces on May 6, 2019,

---

[1] The following facts are not genuinely in dispute unless otherwise noted. Any facts alleged in Defendant's SMF that Plaintiff failed to address in her CSMF are deemed admitted for the purposes of this Motion. *See* S.D. Fla. L.R. 56.1(c).

[2] It is worth noting that Defendant's Motion and SMF both cite to allegations in Plaintiff's original Complaint, which is not the operative pleading in this case. *See, e.g.*, ECF No. [31] ¶¶ 1, 3-5, 8; ECF No. [32] at 13. Indeed, as was clarified at the hearing, Plaintiff filed her Amended Complaint on January 16, 2020, which is also titled "Complaint." *See* ECF No. [1-1] at 131-38. Although many of Defendant's citations in its SMF appear to reference allegations from the original Complaint, the allegations were substantially similar across the two pleadings. As such, for the purposes of this Order, the Court has cited to the allegations in the Amended Complaint.

which Defendant disputes. *See* ECF No. [24-1] at 5, 20, 30; *see also* ECF No. [24-1] at 77:3-73:6, 106:23-107:7; ECF No. [29].

Upon receiving notice of Plaintiff's loss, Defendant assigned an independent adjuster from Insurance Claims Adjusters, L.P. ("ICA") and the claim number BHSI0000085 ("Claim") to Plaintiff's reported loss. *See* ECF No. [24-1] at 309. On September 13, 2019, following an investigation into the loss and review of an estimate prepared by ICA, Defendant issued an initial actual cash value payment of $2,749.14. *See* ECF No. [23-1] ¶ 7; *see also* ECF No. [23-3]. On December 17, 2019, after Plaintiff had initiated this action, Defendant issued a supplemental actual cash value payment of $4,259.86, based on a revised estimate prepared by ICA and an internal review of Plaintiff's Claim. *See* ECF No. [23-1] ¶ 8; *see also* ECF No. [23-4].[3]

In order to prevent additional leaks inside the house, Plaintiff hired Total Quality Restoration ("TQR") to install a tarp on the roof of her Property. *See* ECF No. [26-1] at 338-45; *see also* ECF No. [26-1] at 63:11-70:24. The invoice from TQR reflects that Plaintiff paid $2,121.63 for the tarp to be installed. ECF No. [26-1] at 342-45. Defendant ultimately reimbursed Plaintiff for this amount on December 31, 2019. *See* ECF No. [26-1] at 346. After a few months, however, the tarp began to fail, and Plaintiff began experiencing leaks within her home again. *See* ECF No. [26-1] at 83:12-85:4. As a result, on April 27, 2020, Plaintiff hired Krystal Care Restoration, Inc. ("Krystal Care") to install a shrink wrap roof tarp on the Property, which was more durable and effective in protecting the Property from additional damage. *See* ECF No. [26-1] at 384-88. Krystal Care invoiced Plaintiff for this shrink wrap roof tarp for $28,256.56. ECF

---

[3] This revised estimate determined that the total estimated repair to the damaged portions of the roof amounted to $13,191.69. ECF No. [23-4]. Defendant then deducted recoverable depreciation ($3,582.69), Plaintiff's deductible ($2,500.00), and the prior actual cash value payment ($2,749.14) from this amount to calculate the net payment owed to Plaintiff after the revised estimate. *Id.* ($13,191.69 – $3,582.69 – $2,500.00 – $2,749.14 = $4,259.86).

No. [26-1] at 451. Defendant has not reimbursed Plaintiff for this invoice.

### B. The Insurance Policy

The following Policy provisions are central to the issues in the instant Motion. First, the

Policy contains a Loss Settlement provision in Section I – Conditions, which states that an insurer

will initially pay the actual cash value of damage, but will pay the remaining amount of the full

replacement cost as repairs occur and expenses are incurred.

> ### D. Loss Settlement
> In this Condition **D.**, the terms "cost to repair or replace" and "replacement cost"
> do not include the increased costs incurred to comply with the enforcement of any
> ordinance or law, except to the extent that coverage for these increased costs is
> provided in **E.11.** Ordinance Or Law under Section I – Property Coverages.
> Covered property losses are settled as follows:
> . . . .
> **2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction
> for depreciation, subject to the following:
> . . . .
>> **d.** "We" will initially pay at least the actual cash value of the damage, less any
>> applicable deductible. "We" will then pay any remaining amounts necessary to
>> perform such repairs as the work is performed and the expenses are incurred
>> and according to the provisions of **2.a.** and **2.b.** If total loss occurs, "we" will
>> pay the full replacement cost without reservation or holdback of any
>> depreciation in value, subject to the policy limits.

ECF No. [23-2] at 30, 48.

Moreover, the Policy sets forth certain Additional Coverages within Section I – Property

Coverages, including an Ordinance or Law provision:

> ### 11. Ordinance Or Law
> **a.** You may use up to 10%[4] of the limit of liability that applies to Coverage **A**
> for the increased costs you incur due to the enforcement of any ordinance or
> law which requires or regulates:
>> **(1)** The construction, demolition, remodeling, renovation or repair of that part
>> of a covered building or other structure damaged by a Peril Insured
>> Against;
>> **(2)** The demolition and reconstruction of the undamaged part of a covered

---

[4] The Policy includes an endorsement titled "ORDINANCE OR LAW INCREASED AMOUNT OF
COVERAGE," which increases the total limit of liability for ordinance or law coverage from 10% to 25%.
*See* ECF No. [23-2] at 59.

> building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or
>
> **(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.
>
> **b.** You may all or part of this ordinance or law coverage to pay for the increased costs you incur to remove the debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

*Id.* at 24.

As noted above, the Policy details certain conditions that must be met before an insurer becomes obligated to provide coverage:

> **C. Duties After Loss**
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
> . . . .
> **4.** Protect the property from further damage. If repairs to the property are required, you must:
>     **a.** Make reasonable and necessary repairs to protect the property; and
>     **b.** Keep an accurate record of repair expenses[.]

*Id.* at 30. Likewise, the Additional Coverages section contains a provision on Reasonable Repairs, which provides for the reimbursement of reasonable costs incurred by an insured in connection with making necessary repairs: "'We' will pay the reasonable cost 'you' incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss and related damages are covered." *Id.* at 44.

**C.   This Case**

The Amended Complaint alleges that Defendant breached the Policy by failing or refusing to properly adjust and pay Plaintiff's Claim. *See* ECF No. [1-1] at 133-34, ¶¶ 23, 31. Indeed, in Plaintiff's Second Rule 26 Supplemental Disclosures, she indicated that she was claiming

"Property Damage" in the amount of $186,475.46, which was based on Mr. Brizuela's estimate of the cost to replace the roof in its entirety. *See* ECF No. [28-1] at 3; *see also* ECF No. [27-1]. Plaintiff also indicated that she was claiming $28,256.56 for the cost of the Krystal Care shrink wrap tarp, *see* ECF No. [26-1] at 451, along with interest, attorneys' fees, and costs to be determined at a later date, should Plaintiff prevail in this action. *See* ECF No. [28-1] at 3.

Defendant now contends that Plaintiff is not entitled to recover these amounts for a number of different reasons, including that Plaintiff has not made any repairs to the Property since the loss and therefore has not incurred any of the costs she seeks to recover, as required by the Policy language. In her CSMF, Plaintiff denies Defendant's factual statement that "no repairs to the Property have been completed" and states that both the TQR tarp and the Krystal Care shrink wrap roof tarp were repairs that she made to the Property since the loss. *See* ECF No. [48] ¶ 12.[5] Oddly, however, in her Response and during the hearing, Plaintiff conceded that she can only recover the actual cash value of the damage at this time, not the replacement cost value, because she has not commenced any repairs to the Property. *See* ECF No. [47] at 2. Plaintiff nonetheless asserts that she will be entitled to the remaining depreciation amounts that were withheld from the full replacement cost once repairs commence. *Id.*

---

[5] The Court notes that Plaintiff's CSMF is woefully deficient because, aside from two citations to specific pincites in the record, the CSMF refers to general exhibits without any citations to relevant pages that support her point. *Compare* ECF No. [48] ¶ 3, *with id.* ¶¶ 11-17. Moreover, a substantial number of the allegations in the CSMF contain citations to the Amended Complaint and/or to Plaintiff's Response to the instant Motion, neither of which are *evidence* sufficient to withstand a motion for summary judgment. *See id.* ¶¶ 6-9, 11, 13, 18, 22-23. Clearly, Plaintiff's CSMF fails to comply with the Local Rules. *See* S.D. Fla. L.R. 56.1(b)(1)(B) (explaining the form required for statements of material fact, including the requirement that "each fact [be] supported by specific, pinpoint references to particular parts of record material, including depositions, documents, electronically stored information, affidavits, stipulations (including those made for purposes of the motion only), admissions, and interrogatory answers . . . . The pinpoint citations shall reference pages (and line numbers, if appropriate, of exhibits, designate the number and title of each exhibit, and provide the ECF number of all previously filed materials used to support the Statement of Material Facts. When a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite . . . is non-compliant"). Nevertheless, the Court has independently reviewed the record evidence for the purposes of fully addressing Defendant's Motion.

Defendant takes issue with the lack of depreciation calculations in Mr. Brizuela's estimate. However, Mr. Brizuela explained that did not offer his own calculations on the recoverable depreciation in this case because he was not asked to do so. In addition, he notes that neither he nor Plaintiff dispute Defendant's depreciation amounts set forth in the ICA estimate. *See* ECF No. [47-2] ¶¶ 14-16 ("I was not required to opine on the amount of depreciation because Defendant already calculated depreciation, and Plaintiff accepts same. I do not dispute Defendant's depreciation rate of 27.2% for non-O&P (overhead and profit) items and 33.4% for O&P items . . . ."); *see also* ECF No. [23-4]; ECF No. [24-1] at 51:3-18. Mr. Brizuela's repair estimate reflects his opinions and calculations on the estimated cost to fully replace Plaintiff's roof. *See* ECF No. [27-1]; *see also* ECF No. [24-1] at 51:3-18. Indeed, according to Mr. Brizuela, replacement of the roof is necessitated by the Florida Building Code requirements, the age of the roof, and the obsolete and/or damaged roof tiles on numerous areas of the roof, all of which make repairing the roof infeasible and contrary to generally accepted construction principles. *See* ECF No. [47-2] ¶¶ 15-19; *see also* ECF No. [24-1] at 111:1-112:23. As Plaintiff has not commenced any repairs to the Property, Defendant argues that she has not incurred any costs related to the enforcement of an ordinance or law. Plaintiff, however, contends that she has incurred ordinance and law damages and reiterates Mr. Brizuela's opinion that a full roof replacement is necessary because, under the Florida Building Code, she cannot obtain a permit to repair her roof in its current condition. *See* ECF No. [47-2] ¶ 18; *see also* ECF No. [24-1] at 111:1-112:23.

As noted above, Plaintiff also seeks to recover $28,256.56 for Krystal Care's installation of a shrink wrap roof cover. *See* ECF No. [28-1] at 3. Plaintiff contends that this shrink wrap cover was necessary to prevent further leaks inside the Property. *See* ECF No. [26-1] at 84:5-19. According to Defendant, Plaintiff is not entitled to recover this amount because she never issued

any payment to Krystal Care for the invoice and therefore never incurred any costs associated with the shrink wrap installation. *See* ECF No. [26-1] at 90:21-91:8; *see also* ECF No. [25-1] at 24:5-24. Additionally, Defendant highlights that Plaintiff's husband, who is co-insured under the Policy, executed an Assignment of Benefits ("AOB") in favor of Krystal Care, which purports to assign all rights under the Policy to collect this invoice over to Krystal Care. *See* ECF No. [25-1] at 91-93; *see also* ECF No. [25-1] at 31:4-11. Notably, however, in addition to the AOB, Plaintiff's husband also executed a Direction to Pay form that explicitly states, "I agree that any portion of work, deductible(s), betterment, depreciation, or additional work requested by me, or otherwise not covered by insurance, is ultimately my financial responsibility to the Company." ECF No. [26-1] at 387-88.

## III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, the parties may support their positions by citations to evidence in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue of fact is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). In addition, a fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244,

1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

The moving party shoulders the initial burden of demonstrating the absence of any genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party "must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008).

## IV. DISCUSSION

Defendant argues that it is entitled to final summary judgment because there is no record evidence to support Plaintiff's claim that it breached the Policy. Defendant notes that it is not obligated to pay replacement costs until Plaintiff has repaired her Property, and that there is no evidentiary support for the argument that the actual cash value of the covered loss exceeds the amounts Defendant paid to date. Alternatively, Defendant requests that this Court enter partial summary judgment in its favor to: (1) limit any recovery Plaintiff may obtain to the actual cash value of the damage; (2) preclude Plaintiff from recovering payment for the Krystal Care invoice; (3) preclude Plaintiff from recovering any increased costs relating to ordinances or laws (i.e., the Florida Building Code); and (4) dismiss Plaintiff's declaratory judgment claim as duplicative.

Plaintiff opposes the Motion, arguing that summary judgment is improper in this case because significant disputes of material fact remain. Plaintiff first notes that she only seeks to recover actual cash value of the damage at this stage, not the replacement cost. Moreover, Mr. Brizuela was not required to compute his own depreciation figures in his estimate in order to establish Plaintiff's claim of damages, especially where Plaintiff agreed with the depreciation percentages Defendant applied. Plaintiff argues that she has sufficiently "incurred" the Krystal Care amount and the increased law and ordinance costs because she will be held financially responsible for both of these costs, regardless of whether she has expended money to pay them yet. As such, Plaintiff contends that she may properly seek to recover these costs pursuant to the terms of the Policy. Finally, although Plaintiff argued in her Response that the declaratory judgment count is a viable claim independent of the breach of contract count, at the hearing, Plaintiff conceded that Count I should be dismissed because it sought the same relief as the breach of contract count. As such, the Court will dismiss Count I without further discussion.

### A. Replacement Cost vs. Actual Cash Value

First, Defendant argues that it is not obligated to pay the replacement cost of the damage under the Policy until after repairs commence, and that Plaintiff has not offered any evidence to suggest that the actual cash value of the damage is greater than the amount Defendant already paid out. Therefore, Defendant contends that Plaintiff's breach of contract claim must fail as a matter of law because it has not breached any of its duties under the Policy. At the hearing and in her Response, Plaintiff conceded that she is not seeking replacement costs, as no repairs have been undertaken, but that the replacement cost is still relevant to the jury's ultimate determination of damages because the actual cash value is derived from the replacement cost.

"It is hornbook law that a colorable breach of contract claim requires a material breach of a valid contract and damages." *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074, 1079 (M.D. Fla. 2019) (citing *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999)). Further, subject-matter jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332, and Florida law therefore governs the interpretation of the insurance policy at issue here. *See State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004).

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy." *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1356 (S.D. Fla. 2017) (citation omitted). As such, "insurance contracts are construed according to their plain meaning." *Garcia v. Fed. Ins. Co.*, 473 F.3d 1131, 1135 (11th Cir. 2006) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). The "terms of an insurance policy should be taken and understood in their ordinary sense and the policy should receive a reasonable, practical and sensible interpretation consistent with the intent of the parties—not a strained, forced or unrealistic

construction." *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 736 (Fla. 2002) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Liberty Mut. Ins. Co.*, 260 So. 2d 249 (Fla. 4th DCA 1972)). Where a provision of an insurance contract is ambiguous, courts construe such provisions "liberally in favor of the insured and strictly against the insurer who prepared the policy." *Sos*, 396 F. Supp. 3d at 1079 (quoting *Prudential Prop. & Cas. Ins. Co v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993)). Because "an insurer's duties toward its insured arise from the legal effects of the relevant policy provisions," the interpretation of an insurance contract is a question of law to be determined by the court. *Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1355-56 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1427 (S.D. Fla. 1991)).

Moreover, regarding the specific Policy in this case, the Supreme Court of Florida has explained that

> "[r]eplacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property." *State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983, 983 (Fla. 3d DCA 1994). Replacement cost "is measured by what it would cost to replace the damaged structure on the same premises." *Davis v. Allstate Ins. Co.*, 781 So. 2d 1143, 1144 (Fla. 3d DCA 2001) (quoting *Kumar v. Travelers Ins. Co.*, 627 N.Y.S.2d 185, 187 (1995)).
>
> In contrast to a replacement cost policy, actual cash value is generally defined as "fair market value"[6] or "[r]eplacement cost minus normal depreciation," where depreciation is defined as a "decline in an asset's value because of use, wear, obsolescence, or age." *Black's Law Dictionary* 506, 1690 (9th ed. 2009); *see also* [*Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008)]. In other words, replacement cost policies provide greater coverage than actual cash value policies because depreciation is not excluded from replacement cost coverage, whereas it generally is excluded from actual cash value. *See Goff*, 999 So. 2d at 689.

*Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013).

---

[6] "Fair market value" is generally defined as "the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied," and it accounts for a property's depreciated condition. *Am. Reliance Ins. Co. v. Perez*, 689 So. 2d 290, 291 (Fla. 3d DCA 1997) (quoting *City of Tampa v. Colgan*, 163 So. 577, 582 (1935)).

At the outset, after reviewing the relevant case law, the Court agrees with the parties that Plaintiff cannot seek to recover replacement costs at this stage because she has not undertaken any repairs to the Property. *See, e.g.*, *Ceballo v. Citizens Prop. Ins. Corp.*, 967 So. 2d 811, 815 (Fla. 2007). Nevertheless, under Florida law, the replacement cost is still relevant to the jury's ultimate determination on damages, as actual cash value is typically derived from the full replacement cost. *See Goff*, 999 So. 2d at 690 ("As replacement cost policies are intended to operate, following a loss, both actual cash value and the full replacement cost are determined. The difference between those figures is withheld as depreciation until the insured actually repairs or replaces the damaged structure.").

Defendant contends that Plaintiff cannot prove her breach of contract claim based on the alleged underpayment of the actual cash value amount. Defendant argues that Plaintiff has failed to submit any record evidence with regard to the proper estimate of actual cash value here. Indeed, Defendant notes that Mr. Brizuela's estimate, *see* ECF No. [27-1], omitted any depreciation calculations and only computed the replacement cost of the roof.[7] As such, Defendant contends that there is no evidence in the record to support Plaintiff's claim for actual cash value damages. Plaintiff responds that Mr. Brizuela's estimate omitted any depreciation calculation because Plaintiff agrees with the depreciation values stated in Defendant's IAC estimate.

The parties agree that the general formula for computing actual cash value is replacement

---

[7] At the hearing, Defendant also argued that Plaintiff was improperly attempting to change her theory of the case at summary judgment by seeking actual cash value instead of replacement costs, and pointed the Court to paragraph 22 of the Amended Complaint to show that Plaintiff had consistently requested replacement costs during this litigation. *See* ECF No. [1-1] at 133, ¶ 22 ("The Policy requires that Defendant compensate Plaintiff at replacement cost value in the amount that would repair or replace all damaged portions of their home with materials of like kind and quality."). However, the Court notes that this allegation is specifically alleged in Plaintiff's declaratory judgment count, not its more-broadly framed breach of contract count. Thus, the Court is unpersuaded that Plaintiff impermissibly shifted her theory of the case to withstand summary judgment.

cost value minus depreciation, and this framework has been widely recognized across Florida. *See,
e.g.*, *Siegel v. Tower Hill Signature Ins. Co.*, 225 So. 3d 974, 977 (Fla. 3d DCA 2017). Further,
"[a] plaintiff generally does not need to prove contractual damages with mathematical precision to
survive summary judgment. It is enough for the plaintiff to establish that damages exist and can
be proven with reasonable certainty." *SFR Servs. LLC v. GeoVera Specialty Ins. Co.*, No. 2:19-cv-
466-JLB-MRM, 2021 WL 1909669, at *5 (M.D. Fla. May 12, 2021) (citing *Nebula Glass Int'l,
Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006); *see also Buckley Towers Condo.,
Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 666 (11th Cir. 2010).

Upon review, the Court finds that Plaintiff has submitted sufficient evidence to establish
her actual cash value damages with reasonable certainty at trial. Indeed, Plaintiff need only subtract
Defendant's depreciation amounts from Mr. Brizuela's replacement cost estimate to derive the
actual cash value here. Notably, as Plaintiff explains in her Response,

> Defendant's and Plaintiff's respective [replacement cost] values (without reduction
> for depreciation) are $13,191.69 and $186,475.46. This represents a difference in
> [replacement cost] value of $173,283.77. Adopting Defendant's depreciation
> percentages set forth above, Plaintiff's claimed [actual cash] value is $124,192.66.
> . . . [I]n order for Plaintiff's [replacement cost] value to fall below Defendant's
> [actual cash] value, the withheld depreciation would need to be at least 93%.

ECF No. [47] at 10. "Thus, assuming the underlying loss is covered, it would clearly be possible
for [Plaintiff] to establish damages at trial with reasonable certainty." *SFR Servs. LLC*, 2021 WL
1909669, at *5.[8] Because Mr. Brizuela's estimate supports Plaintiff's theory that the actual cash
value of the loss exceeds what Defendant paid, Defendant's Motion must be denied on this issue.

---

[8] In fact, the very existence of competing estimates suggests that there are issues of material fact here,
especially where they relate to coverage issues that are at the heart of Plaintiff's breach of contract claim.
It is not the Court's role to weigh this competing evidence. *See Lewis*, 934 F.3d at 1179 (explaining that, at
summary judgment, the court "may not weigh evidence or make credibility determinations, which 'are jury
functions, not those of a judge'" (quoting *Feliciano*, 707 F.3d at 1252)). Likewise, to the extent that
Defendant takes issue with the amount of depreciation deducted from Mr. Brizuela's estimate, it is free to
explore this issue on cross examination so the jury can afford these calculations the appropriate weight.

### B.  Krystal Care Invoice

Next, Defendant argues that Plaintiff is not entitled to recover the amount owed on the Krystal Care invoice because Plaintiff hired Krystal Care after she had already filed this action. As such, Defendant takes the position that, because Plaintiff's right to recover this cost under a breach of contract theory did not exist at the time of filing, Defendant cannot be liable for these later-accrued damages. In other words, Defendant seemingly argues that Plaintiff's recoverable damages are limited only to those monetary amounts that were incurred prior to the initiation of this action. However, as the Court explained during the hearing, the cases Defendant cited in support of this argument all address the ripeness of a cause of action, not a litigant's entitlement to recover damages that were a direct result of the breach. Therefore, Defendant's first argument regarding the Krystal Care invoice is without merit.

Defendant contends that Plaintiff is not entitled to recover the amount of the Krystal Care invoice because Plaintiff neither paid this invoice, nor is she financially responsible for paying the invoice. Instead, Defendant notes that Plaintiff was never liable to pay this invoice because her husband executed the AOB, which assigned all rights under the Policy to collect this amount to Krystal Care. *See* ECF No. [25-1] at 91-93.[9] According to Defendant, because Plaintiff never

---

[9] Defendant also questions whether Plaintiff ever incurred any obligation to pay this invoice because the Direction to Pay form, which contained a provision consenting to be held financially responsible for any portion of the invoice that was not recovered from Defendant, was only signed by Plaintiff's husband and not by Plaintiff. *See* ECF No. [26-1] at 387-88. A review of the record before this Court and the filings in the state court proceedings reveals that this argument is without merit. The Court first notes that the AOB and the Direction to Pay are each signed by Plaintiff's husband, but both she and her husband are listed on these agreements as the insureds. *See id.*; *see also* ECF No. [25-1] at 91-93. Further, after Defendant successfully challenged Plaintiff's original Complaint for failing to join her husband as an indispensable party, Plaintiff filed her Amended Complaint and attached an Assignment of Insurance Benefits form signed by her husband, which assigned all rights, benefits, and obligations arising under the Policy to Plaintiff. *See* ECF No. [1-1] at 138; *see also id.* at 132, ¶ 5 ("Plaintiff brings this action as an assignee of Farid Marquez pursuant to a valid assignment of benefits. Attached hereto and incorporated herein. See **Exhibit A**.").

"incurred" the cost of the shrink wrap tarp, she cannot recover the amount of the invoice under the Policy.

Upon review of Florida law regarding assignments, the Court concludes that summary judgment on this issue is warranted. "An assignment is 'a contract between the assignor and the assignee.'" *Kinsworthy v. AIG Prop. Cas. Co.*, No. 2:19-cv-479-FtM-38MRM, 2020 WL 4202096, at *2 (M.D. Fla. July 22, 2020) (citing 3A Fla. Jur. 2d Assignments § 1 (2d ed. June 2020 update); *Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp.*, 864 So. 2d 55, 58 (Fla. 5th DCA 2003) ("An assignment is a transfer of all the interests and rights to the thing assigned.")). "The assignee stands in the shoes of the assignor and is able to maintain suit in its own name as the real party in interest, 'that is the person in whom rests by substantive law, the claim to be enforced.'" *United Water Restoration Grp. v. State Farm Fla. Ins. Co.*, 173 So. 3d 1025, 1027 (Fla. 1st DCA 2015) (quoting *Weiss v. Johansen*, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005)). Indeed, "[o]nce an assignment has been made, 'the assignor no longer has a right to enforce the interest because the assignee has obtained all rights to the thing assigned.'" *Certified Priority Restoration v. Citizens Prop. Ins. Corp.*, --- So. 3d ---, No. 4D21-149, 2021 WL 2673368, at *2 (Fla. 4th DCA June 30, 2021) (quoting *One Call Prop. Servs. Inc. v. Sec. First Ins. Co.*, 165 So. 3d 749, 752 (Fla. 4th DCA 2015)); *see also State Farm Fire & Cas. Co. v. Ray*, 556 So. 2d 811, 813 (Fla. 5th DCA 1990) ("Because an unqualified assignment transfers to the assignee all the interest of the assignor under the assigned contract, the assignor has no right to make any claim on the contract once the assignment is complete, unless authorized to do so by the assignee." (citations omitted)).

"When examining an assignment, courts [] use Florida's rules of contract construction." *Kinsworthy*, 2020 WL 4202096, at *2. "As with any contract, the Court first looks to the plain language of the assignment to determine the parties' intent." *SFR Servs. LLC*, 2021 WL 1909669,

at *3 (citing *BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017)). "[W]here a contract is clear and unambiguous, it must be enforced as written." *Andersen Windows, Inc. v. Hochberg*, 997 So. 2d 1212, 1214 (Fla. 3d DCA 2008). "Even if an insurance policy contained a specific, articulate provision precluding an insured's post-loss assignments of benefits without the insurer's consent, Florida case law yields deep-rooted support for the conclusion that post-loss assignments do not require an insurer's consent." *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 642-43 (Fla. 2d DCA 2016) (citing *One Call Prop. Servs. Inc.*, 165 So. 3d at 755).

Furthermore, "[t]he assignment of insurance benefits is a common arrangement in construction contracts." *Roofing Experts of S. Fla., Inc. v. USAA Cas. Ins. Co.*, No. 19-cv-80653, 2019 WL 7881719, at *2 (S.D. Fla. Aug. 15, 2019) (citing *Torremar Condo. Ass'n, Inc. v. Great Am. Ins. Co.*, No. 15-cv-60839, 2015 WL 11198246, at *3 (S.D. Fla. July 9, 2015)). Courts in Florida have repeatedly held that "a contract can contain a valid assignment of insurance proceeds even where it requires the homeowner to pay the amount not covered by insurance." *Id.* (citing *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678, at *1 (M.D. Fla. May 29, 2019)).[10] Thus, where the assignment is accepted with the

---

[10] *See, e.g.*, *United Auto. Ins. Co. v. Otero*, 39 So. 3d 563, 564 (Fla. 3d DCA 2010) (concluding that the insured lacked standing to bring his claim for breach of contract for the insurer's nonpayment of medical bills where he entered into an unqualified agreement to assign his insurance benefits to his medical provider, but still remained liable for any unpaid bills); *Oglesby v. State Farm Mut. Auto. Ins. Co.*, 781 So. 2d 469, 470 (Fla. 5th DCA 2001) ("This is a case, as is most often the case, in which the medical provider agrees to perform services based only on an unqualified assignment of medical benefits on the condition that the patient will be ultimately responsible for any medical bills either not covered by the policy or simply not paid by the insurer. If at some point the medical provider decides to forego a claim against the insurer and instead look to the insured, a condition precedent to such action should be the reassignment of the medical benefits under the insurance policy to the insured."); *Garcia v. State Farm Mut. Auto. Ins. Co.*, 766 So. 2d 430, 432-33 (Fla. 5th DCA 2000) ("Even if Garcia made a qualified assignment, thereby retaining some financial exposure for her medical bills, Garcia's suit would be premature at this point and should be dismissed."); *Livingston v. State Farm Mut. Auto. Ins. Co.*, 774 So. 2d 716, 718-19 (Fla. 3d DCA 2000) (If the assignee chooses to sue the insured for any unpaid amounts, "then [the insured] could add [the insurer]

condition that an insured remains liable for any unpaid amounts owed, the general rule still applies that "only the insured or the [assignee can] 'own[]' the cause of action against the insurer at any one time. And the one that owns the claim must bring the action if an action is to be brought." *Oglesby*, 781 So. 2d at 470.

As Plaintiff notes in her Response, "[i]t is undisputed that the agreement between Krystal Care and Plaintiff comprised of two documents titled 'Assignment of Benefits' and 'Direction to Pay.'" *See* ECF No. [47] at 7. Thus, Plaintiff admits that she willingly assigned her rights to recover insurance benefits under the Policy for the work performed by Krystal Care. However, as the case law above makes clear, Plaintiff cannot seek to recover the cost of the Krystal Care services in this case simply because she maintains some conditional financial liability to pay the invoice if Defendant refuses to do so. Rather, Plaintiff forfeited her right to recover damages against Defendant for the shrink wrap cover by assigning her claims to Krystal Care. As such, the Court concludes that Defendant's Motion is due to be granted on this issue.

**C. Ordinance and Law Damages**

Finally, Defendant argues that Plaintiff cannot recover increased costs attributable to the enforcement of any ordinance or law, including the Florida Building Code, because it is undisputed that she has not commenced or completed any repairs to the Property. Plaintiff submits the estimate of her expert, Mr. Brizuela, who recommends a complete roof replacement based, in part, on the Florida Building Code requirement that any repairs to more than 25% of the roof area necessitate a roof replacement. *See* ECF No. [47-2] ¶¶ 17-19. Because the current age and condition of the roof would preclude her from obtaining a permit to conduct the necessary repairs, Plaintiff argues

---

as a third-party defendant because she was not a party to [any prior] lawsuit . . . and should not be bound by its determination[.]").

that she has incurred these increased costs and is therefore entitled to recover ordinance and law damages.

The Policy language here requires that an insured have "incurred" the increased costs due to the enforcement of any ordinance or law, and the parties generally agree that "'to incur' means to become liable for the expense, but not necessarily to have actually expended it." *Ceballo*, 967 So. 2d at 815; *see also* ECF No. [23-2] at 24 (noting that an insured may use a percentage of the limit of liability for "the increased costs [they] incur due to the enforcement of any ordinance or law . . . ."). Nevertheless, Plaintiff takes the position that, in the absence of the ability to secure a permit for the necessary roof repairs, she has become liable for the increased expense of replacing the entire roof system under the Florida Building Code. Plaintiff notes that this liability exists, regardless of whether she has actually expended any money to begin the roof replacement.

"'Ordinance and Law' is the cost of bringing any structure (here, the roof) into compliance with applicable ordinances or laws." *Jossfolk v. United Prop. & Cas. Ins. Co.*, 110 So. 3d 110, 111 (Fla. 4th DCA 2013). Indeed, ordinance and law coverage provides additional reimbursement to the insured, "in amounts and on other terms specified in the insurance policy, to cover costs necessary to meet applicable laws and ordinances regulating the construction, use, or repair of any property or requiring the tearing down of any property, including the costs of removing debris." *Noa v. Fla. Ins. Guar. Ass'n*, 215 So. 3d 141, 143 (Fla. 3d DCA 2017) (internal quotation marks omitted) (citation omitted). Courts in Florida at both the state and federal level have determined, under similarly worded insurance provisions, that an insured is not entitled to recover ordinance and law costs where they "never repaired the property *and never actually incurred increased damages due to the enforcement of laws or ordinances*." *Buckley Towers Condo., Inc.*, 395 F.

Case No. 20-cv-22791-BLOOM/Louis

App'x at 665 (emphasis added).[11] Here, Plaintiff has failed to demonstrate any affirmative steps taken to begin the repairs on the Property that would support her position that she has incurred increased costs and liability for the enforcement of the Florida Building Code. Absent an application for a permit to repair her roof, for example, Plaintiff has failed to show how she has incurred liability for the enforcement of any ordinance or law in this case. Therefore, the Court grants Defendant's Motion on this issue.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Final Summary Judgment or, in the Alternative, for Partial Summary Judgment, **ECF No. [32]**, is **GRANTED in part and DENIED in part consistent with this Order**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 2, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

---

[11] *See also Ceballo*, 967 So. 2d at 815 (holding that proof of entitlement to the face value of the policy "does not affect [the insured's] obligation to show that [she has] incurred an additional loss in order to recover under the supplemental [law and ordinance] coverage"); *Pedersen v. Citizens Prop. Ins. Corp.*, 157 So. 3d 431, 433 (Fla. 4th DCA 2015) ("It is well-settled in the law, and the policy language makes clear, that the recovery of supplemental ordinance or law damages is predicated on the insured having 'incurred' such expenses."); *Jossfolk*, 110 So. 3d at 113 ("Ordinance and Law is not recoverable until it is incurred . . . . Here, . . . [the insured] had not applied for repairs of the roof. Thus, he had not incurred or become liable for any additional expense until the City [] required compliance with current ordinances in order to complete repairs. It was at that point, according to *Ceballo* that [the insured] incurred additional loss[.]"); *Everhart v. Citizens Prop. Ins. Corp.*, 90 So. 3d 374, 375 (Fla. 1st DCA 2012) (Makar, J., specially concurring) (requiring that, in order to trigger supplemental ordinance and law coverage, an insurer must show that they "took steps to incur the liability (such as by entering a written contract to rebuild [their] storm-damaged home) . . . ."); *cf. CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 2:19-cv-442-FtM-29MRM, 2021 WL 877560, at *9 (M.D. Fla. Mar. 9, 2021) (denying summary judgment where the insured entered into a contract to repair his roof because the question of "whether any ordinance or law damages have been 'incurred' in this case is a question for the jury").

Case No. 20-cv-22791-BLOOM/Louis

Counsel of Record