UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-22791-BB

VILMA MARQUEZ,

     Plaintiff,

vs.

NATIONAL FIRE & MARINE
INSURANCE COMPANY,

     Defendant.

_____/

**REPORT AND RECOMMENDATION**

**THIS MATTER** came before the Court upon Defendant National Fire & Marine Insurance Company's Omnibus Post-Trial Motions on Liability and Damages and Incorporated Memorandum of Law (ECF No. 152). This matter was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Beth Bloom, United States District Judge, for a Report and Recommendation (ECF No. 155). Plaintiff filed a Response (ECF No. 170), to which Defendant filed a Reply (ECF No. 173). The Court has carefully reviewed the Motions, Response, and Reply, and is otherwise duly advised in the premises. Upon consideration, the undersigned recommends that Defendant's Omnibus Post-Trial Motions on Liability and Damages and Incorporated Memorandum of Law be **DENIED** as follows.

I.     **BACKGROUND**

This case involves a claim for insurance benefits allegedly owed to Plaintiff, Vilma Marquez, pursuant to her homeowner's insurance policy ("Policy"). Defendant issued the insurance policy to Plaintiff and her husband for their property located in Miami, Florida

("Property").  During the policy period, the Property sustained a covered loss.  Plaintiff first noticed water leaking from an interior wall of the Property on June 5, 2019, and she reported the loss one week later.  Plaintiff's cause, origin, and damage expert, Alfredo Brizuela, determined that the loss resulted from strong wind forces sustained on May 6, 2019.  Mr. Brizuela opined that a full roof replacement was necessary because, under the Florida Building Code, Plaintiff could not obtain a permit to repair her roof.

Plaintiff alleged that Defendant breached the Policy by failing or refusing to properly adjust and pay her claim.  Defendant argued that Plaintiff was not entitled to recover these amounts for a number of different reasons, including that Plaintiff had not made any repairs to the Property since the loss and therefore did not incur any of the costs she sought to recover, as required by the Policy language.  Defendant further took issue with the lack of depreciation calculations in Mr. Brizuela's estimate.  Defendant moved for summary judgment and the Court granted in part and denied in part Defendant's Motion for Summary Judgment (ECF No. 71).  The Court found that Plaintiff had forfeited her right to recover damages against Defendant for the shrink wrap cover and failed to demonstrate any affirmative steps taken to begin the repairs on the Property that would support her position that she has incurred increased costs and liability for the enforcement of the Florida Building Code.  On the other hand, the Court found that Plaintiff had submitted sufficient evidence to establish her actual cash value damages with reasonable certainty at trial.

This matter proceeded to trial during the week of February 7, 2022.  On February 11, 2022, the jury returned a verdict in favor of the Plaintiff for $136,484.46 (ECF No. 135).  On February 14, 2022, this Court entered a Final Judgment in favor of Plaintiff (ECF No. 137).  Defendant now renews its Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) and moves to alter or amend the judgment or for a new trial pursuant to Fed. R. Civ. P. 59(a).

## II.    DISCUSSION

### a.  Renewed Motion for Judgment as a Matter of Law

Defendant renews its Motion for Judgment as a Matter of Law on the basis that Plaintiff did not adduce competent evidence from which a jury could conclude that there were wind gusts of 62 miles per hour at Plaintiff's house on May 6, 2019: the cause of the claimed roof damage.[1] Specifically, Defendant argues that the opinion of Plaintiff's expert, Mr. Brizuela, lacks a scientifically reliable methodology for establishing wind speeds.  Defendant avers that the CoreLogic report—upon which Defendant claims Mr. Brizuela based his foundational functional assumption of wind speeds—is unreliable.  In response, Plaintiff argues that there was legally sufficient evidence presented upon which the jury could reasonably find for the Plaintiff.

"[A] court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . . We review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party." *Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012) (citations omitted).  "[I]f there is substantial conflict in the evidence, such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied."  *Id*. at 1311 (citing *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006)).  Simply put, "judgment as a matter of law is appropriate only if the facts and inferences point so overwhelmingly in favor of one party that reasonable people could not arrive at a contrary verdict." *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (citation and internal quotation marks omitted).

---

[1] At the conclusion of Plaintiff's case-in-chief, Defendant moved for a directed verdict by renewing a previous *Daubert* challenge that the Court already denied (ECF No. 166 at 170:22–171:2) ("Your Honor, on behalf of the Defendant, from a directed verdict standpoint, we would, just for the record, simply renew our motion with regard to causation as to Mr. Brizuela.  I know the Court's ruling.  I just want to preserve the record.").

As an initial matter, the Court already rejected the same *Daubert* challenge Defendant makes here.[2]  Prior to trial, Defendant moved to strike the testimony of Mr. Brizuela on the basis that there was no methodology utilized to establish that the leak in the dining room of the Property and/or the claimed damage to the roofing system was the result of the May 6, 2019 wind event (ECF No. 29).  Defendant argued that the calculations that formed the basis of Mr. Brizuela's opinion were derived solely from the CoreLogic report and Defendant averred that CoreLogic neither discloses the weather data claimed to be utilized for creating its wind estimate, nor has it been peer-reviewed by the scientific community to validate its process.  Plaintiff, on the other hand, insisted, as it does now, that Mr. Brizuela only relied in part on information provided by CoreLogic, and offers other evidence that informed his opinion that the damage was caused by high winds.

Under *Daubert*, a "trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *City of South Miami v. DeSantis*, 2020 WL 7074644, at *4 (S.D. Fla. Dec. 3, 2020).  At the *Daubert* motion hearing on July 7, 2021, Mr. Brizuela testified regarding his methodology and use of CoreLogic and the Court ultimately denied Defendant's *Daubert* Motion to Strike the Testimony of Plaintiff's Expert Al Brizuela (ECF No. 57).

As noted in Plaintiff Response, Mr. Brizuela's opinion was informed not only by CoreLogic data but additionally considered sources such as thermal, historical, and aerial

---

[2] Trial courts engage in a three-part inquiry to determine the admissibility of the proffered expert testimony on scientific issues under Rule 702: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

photographs of the damage including images captured by drones; a physical inspection of the roof to determine the extent of damage to the roof membrane, and information from the National Weather Service.  Mr. Brizuela testified that CoreLogic is accepted in the forensic engineering industry and scientific community.[3]  Mr. Brizuela also stated that his opinion would have been the same regardless of the CoreLogic report.  As demonstrated at trial, Mr. Brizuela's methodology consisted of employing engineering and construction principles along with his in-depth knowledge of construction materials and damages combined with over forty years of experience.  Considering this evidence and drawing all reasonable inferences in favor of Plaintiff, there is no legally sufficient evidentiary basis to make a finding in favor of Defendant.

Accordingly, just as the Court rejected Defendant's *Daubert* challenge, the undersigned respectfully recommends that Defendant's Renewed Motion for Judgment as a Matter of Law be denied.

### b.  Motion to Alter or Amend the Final Judgment

Defendant moves to alter or amend the final judgment because it alleges that the jury committed a manifest error of law by awarding damages based upon the replacement of the entire roof at the replacement cost value.  Plaintiff argues that there is nothing in the record or on the face of the verdict form to demonstrate that the jury awarded damages for items that were not actually damaged and that Defendant improperly infers that the jury's verdict awarded Plaintiff the replacement cost of her roof.

A court may grant a motion under Rule 59 only on grounds of "'newly-discovered evidence or manifest errors of law or fact.'"  *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting

---

[3] In her Response, Plaintiff notes that Defendant's causation expert, Dr. John Carroll, ordered the same CoreLogic report as Mr. Brizuela.  This evidence was adduced after Defendant moved for a directed verdict after Plaintiff's case-in-chief.  Plaintiff further claims that Defendant's weather expert, Dr. Lee Branscome, testified that he used STRIKEnet, a product of CoreLogic, in a prior case where he was hired as an expert witness for Plaintiff's counsel.

*In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). "The jury is, of course, the traditional finder

of the facts, and its verdict must stand unless [the losing party] can show that there is no substantial

evidence to support it, considering the evidence in the light most favorable to [the prevailing party],

and clothing it with all reasonable inferences to be deduced therefrom." *Liberty Mut. Ins. Co. v.*

*Falgoust*, 386 F. 2d 248, 253 (5th Cir. 1967). "It is not the function of the [district] court, however,

to weigh the conflicting evidence, judge the credibility of witnesses and arrive at a conclusion

opposite from the one reached by the jury, where there is a reasonable basis in the record for the

jury's verdict." *Id*. Moreover, "[t]he decision whether to alter or amend a judgment pursuant to

Rule 59(e) is 'committed to the sound discretion of the district judge.'" *Flanders v. United States*,

No. 16-CV-20296-KMM, 2018 WL 9441319, at *1 (S.D. Fla. Aug. 1, 2018) (quoting *Mincey v.*

*Head*, 206 F.3d 1106, 1137 (11th Cir. 2000)).

In the Court's Order granting in part and denying in part Defendant's Motion for Summary

Judgment, the Court ruled that, because Plaintiff had made no repairs, she could not recover the

full roof replacement cost (ECF No. 71 at 13). At trial, the Court provided two jury instructions

prior to deliberations limiting recoverable damages to actual cash value as applied only to direct

and physical damages that were actually sustained on May 6, 2019:

> The parties agree that the appropriate measure of damages in this matter is actual cash
> value. To calculate the amount of actual cash value, you must determine the amount of the
> replacement cost value. Replacement cost value is the replacement cost of that part of the
> building damaged with material of like kind and quality and for like use. Then you must
> determine the appropriate amount of recoverable depreciation that applies to that
> replacement cost value. Your calculation for actual cash value is the difference between
> the two figures.

(ECF No. 140 at 10) and;

> NATIONAL FIRE AND MARINE INSURANCE COMPANY contends that coverage is
> excluded. The insurance contract specifically provides insurance coverage "for sudden and
> accidental direct loss to property described in Coverages A and B only if that loss is a
> physical loss to covered property." The language of the insurance contract requiring that
> the loss must be "direct" and "physical" requires that the damages sustained must be actual

damages from the claimed loss. Accordingly, the claimed loss in this matter is limited to the property that was actually damaged.

(ECF No. 140 at 9).

Mr. Brizuela testified regarding the extent of the direct and physical damage to the roof and other areas of Plaintiff's house to include the dining room, and the wood border on the patio. Mr. Brizuela estimated that the replacement cost value of Plaintiff's roof is $136,484.46 (ECF No. 133-9). Defendant concludes that because the awarded damages were in the exact amount of Mr. Brizuela's estimate for the replacement cost value of a new roof, down to the 46 cents,[4] the jury must have committed a manifest error of law. Plaintiff argues that the fact that the jury's verdict is the same as Mr. Brizuela's estimate does not support Defendant's inference that the jury awarded her damages solely based on that single estimate.

Mr. Brizuela's testified that the property he believed suffered direct and physical damage on May 6, 2019 included 20 roof tiles, 21 claimed tears in the roofing membrane, 84 square feet of insulation, the ensuing water loss to the dining room, and damage to the wood border on the back patio (ECF Nos. 152-1, Tab 2 at 194:18, 195:11, 197:8–13, 201:24–202:4). Mr. Brizuela testified that the replacement cost value of these damages was $100 for the roof tiles, $420 for the tears in the roofing membrane, $300 for attic insulation, $4,417.51 worth of damages to the dining room, and $3,710.06 worth of damages to the wood border on the back patio (ECF No. 152-1, Tab 2 at 194:18–197:13; 199:21–202:24). This totaled $8,947.57. With the depreciation amount of 33.4%, agreed upon by the Parties, Defendant contends that the actual cash value of property actually damaged is $5,949.08.

In response, Plaintiff points to Mr. Defendant's own roofing expert, Michael Lukis, who gave a cost estimate to replace the roof in the amount of $106,287.00 (ECF No. 109-1 at 41:6-12).

---

[4] Mr. Brizuela estimated that the replacement cost value of the roof is $136,484.46 (ECF No. 133-9).

Mr. Lukis claimed that he would not accept the job to replace the roof for the depreciated amount of $70,149.00 (*id*. at 54:9–22).  Plaintiff also cites Mr. Brizuela's testimony regarding the extent of damage to the roof and other areas of the house.  Plaintiff notes Mr. Brizuela's testimony that it was impossible to perform spot repairs to the roof because the amount of damaged membrane would require removal of the entire roof covering (ECF No. 170-3 at 214:6–216:6.).  Moreover, Mr. Brizuela's estimate failed to apply the Parties' agreed upon depreciation which actually indicates that the replacement cost value of a new roof is $124,192.66.  Thus, Plaintiff contends that the jury's verdict was not for the replacement cost value in accordance with the Court's instructions.

I disagree that Defendant has shown manifest error occurred. First, I note that the Court properly instructed the jury to limit the recoverable damages to the actual cash value of those items that suffered direct and physical damage, not the replacement cost value.  The Court presumes the jury followed its instructions.  *E.g., Parker v. Randolph,* 442 U.S. 62, 73 (1979) ("A crucial assumption underlying that system [of trial by jury] is that juries will follow the instructions given them by the trial judge. Were this not so, it would be pointless for a trial court to instruct a jury."); *id.* at 75 n.7 ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions.").

Moreover, the jury had the right to weigh the competing testimony of Mr. Brizuela, Mr. Lukis, and the rest of the entire record in attempting to determine the actual cash value of the areas that suffered physical and direct damage.  Having considered the evidence, the verdict reflects the jury's factual finding with respect to damages.  While Defendant advances what it contends is a better measure of damages, the Court will not replace its assessment of the evidence for the jury's. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are

more reasonable.  *Peer v. Lewis*, No. 06-60146-CIV, 2008 WL 2047978, at *18–19 (S.D. Fla. May 13, 2008), *aff'd*, No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009) (citing *Narcisse v. Illinois Cent. Gulf R. Co.,* 620 F.2d 544, 548 (5th Cir. 1980)).  As the Eleventh Circuit explained in *Williams v. City of Valdosta*, in situations, like here, "when the trial involves simple issues, highly disputed facts, and there is an absence of pernicious occurrences, trial courts should be considerably less inclined to disturb a jury verdict."  689 F.2d 964, 974 (11th Cir. 1982) (internal citations and quotations omitted).  Accordingly, the undersigned respectfully recommends that the verdict and final judgment stand.

### c.   Motion for a New Trial

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A).  In considering a motion for new trial, the court must determine if "the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (internal quotations and citations omitted). "[T]o assure that the judge does not simply substitute his judgment for that of the jury ... we have noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.* (citations omitted).

This requires the court to balance its "traditional equity power to prevent injustice" with its "duty to guard the integrity and fairness of the proceedings."  *Christopher v. Florida*, 449 F.3d 1360, 1366 n.4 (11th Cir. 2006). "[A] new trial is warranted only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's substantial rights or resulted in substantial injustice.)." *Knight through Kerr v. Miami-Dade Cty.*, 856 F.3d 795, 807 (11th Cir. 2017) (citation and internal quotation marks omitted).

Defendant moves for a new trial alleging that the verdict is contrary to the greater weight of the evidence.  Plaintiff argues that Defendant's Motion for a New Trial is merely a renewed challenge to the admissibility of Mr. Brizuela's testimony, that CoreLogic was one of many pieces considered by Mr. Brizuela, that Mr. Brizuela testified that he could reach his conclusion without CoreLogic, and that the jury properly weighed the credibility of each expert in reaching its conclusion.

As discussed above, Defendant moved to strike the testimony of Mr. Brizuela in a *Daubert* challenge, alleging it did not meet the reliability prong of the *Daubert* standard (ECF No. 29), and the Court rejected that argument (ECF No. 57).  Defendant cites *Alphamed Pharm. v. Arriva Pharm.*, where the Court found a new trial was appropriate where the jury's verdict for the plaintiff was contingent upon the insufficiently proven assumptions by plaintiff's expert. 432 F. Supp. 2d 1319, 1346–47, 1350–52 (S.D. Fla. 2006).  In *Alphamed*, the Court had ruled prior to trial that the plaintiff's expert was allowed to rely on assumptions about technical and scientific aspects of the case but was not relieved at trial of the responsibility to prove the factual bases behind those assumptions.  *Id*. at 1350–51.

Mr. Brizuela had that same responsibility.  Through his testimony, Mr. Brizuela demonstrated the factual bases of his opinion, specifically that he relied on multiple sources besides CoreLogic.  Mr. Brizuela testified that "[t]he most important factor in this matter is how quickly the water entered the house through the opening in the roof.  And then the rest of the data needs to tie into that" (ECF No. 170-3 at 12:21–13:13).  Though important, Plaintiff adduced evidence that CoreLogic was just one part of Mr. Brizuela's methodology.

Furthermore, the jury weighed the credibility of each expert as evidenced by their questions during trial.  For instance, Defendant's expert, Dr. Branscome, offered competing testimony to that of Mr. Brizuela.  The jury asked Dr. Branscome if his estimate of wind speeds were

approximate (ECF Nos. 138; 170-2 at 32:19-21; 138). The jury also inquired about Dr. Branscome's methodology and the sources he relied upon in formulating his opinion and any associated deficiencies (ECF Nos. 138; 170-2 at 32:19–24, 33:2–3). Based on the jury's questions, the jury sufficiently weighed the experts' opinions.

In light of the above, the jury's verdict was not against the clear weight of the evidence. Accordingly, the undersigned respectfully recommends Defendant's Motion for a New Trial be denied.

## III.    RECOMMENDATION

For the foregoing reasons, I recommend that Defendant's Omnibus Post-Trial Motions on Liability and Damages and Incorporated Memorandum of Law be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to timely file objections shall bar the Parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 8th day of August, 2022.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE